OPINION
{¶ 1} Defendant-appellant Michael Adkins appeals his convictions and sentences entered by the Stark County Court of Common Pleas, on one count of kidnapping, in violation of R.C. 2905.01, and one count of escape, in violation of R.C. 2921.34, following a jury trial. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On February 18, 2000, the Stark County Grand Jury indicted appellant on the aforementioned charges. Appellant entered pleas of not guilty to the charges at his arraignment on March 10, 2000. At a pretrial hearing on April 19, 2000, the trial court ordered appellant undergo a competency evaluation. Upon completion of the evaluation, the trial court found appellant competent to stand trial and scheduled the matter for jury trial.
 {¶ 3} Ten days prior to trial, appellant's court appointed counsel filed a Motion to Withdraw. The trial court permitted counsel to withdraw, finding appellant had waived his right to representation by appointed counsel and chose to represent himself. The matter proceeded to trial. After hearing all the evidence and deliberations, the jury found appellant guilty as charged. The trial court sentenced appellant accordingly. Appellant filed a timely appeal of his convictions and sentences to this Court, which reversed, finding the trial court had failed to properly inquire as to whether appellant fully understood and intelligently relinquished his right to counsel. State v. Adkins (May 1, 2001), Stark 5th App. No. 2000-CA-00224.
 {¶ 4} Upon remand, the trial court appointed counsel to represent appellant. The matter proceeded to jury trial on July 30, 2001. The following evidence was adduced at trial.
 {¶ 5} During mid-January, 2000, appellant, as well as his co-defendants, Michael Walker and Michael Timmons, were patients in the B-Unit at the Massillon Psychiatric Center. The B-Unit, which is a locked area, houses patients with schizophrenia, borderline personality disorders, and suicidal tendencies. The unit also houses "police holds," patients transferred to the facility from prisons or jails for psychiatric evaluation. Appellant and his co-defendants were on the unit as "police holds."
 {¶ 6} On the evening of January 17, 2000, Patricia White, a therapeutic program worker at the Massillon Psychiatric Center, was conducting her routine rounds in the B-Unit. White made rounds every half hour, taking a head count of the patients in the unit. The unit consists of approximately 12 to 14 rooms with two beds per room, a common area, a hallway, and a dining room. While on the round, White noticed Michael Walker exit another client's room and proceed down the hallway. As White continued her head count, she observed Walker enter the room assigned to appellant and Michael Timmons and proceed into the bathroom. White followed Walker into the room and turned on the lights. White checked behind the privacy curtain which was pulled around both beds. White pulled back the curtain and found appellant standing near the end of the bed, close to the door and light switch. White proceeded toward the next bed to see if Timmons was in the room.
 {¶ 7} Timmons came from behind the door and grabbed White, twisting her head to the left, and covering her mouth and nose in an attempt to choke her. Walker, who had exited the bathroom, choked White from the front as he and Timmons pushed her to the floor. The lights went out. Timmons held White down while Walker and appellant struck her and searched for her keys. White believed the three men were going to kill her. White attempted to flee, reaching for the doorknob, but it had been removed.
 {¶ 8} Neal Self, a fellow therapeutic program worker, heard the commotion and proceeded down the hallway to investigate. Self forced the door to appellant and Timmons' room open and found White on the floor inside the room. Self noticed appellant and another man in the bathroom, while a third man ran behind the privacy curtain. Self immediately recognized White was injured. He helped her onto her feet and to the nearby nurse's station.
 {¶ 9} White was transported to a local emergency room. Due to the injuries resulting from the attack, White was unable to work for six weeks. She suffered two fractured ribs, a small fracture on her right knee, a black eye, as well as bruises on her neck, jaw, chest, and back.
 {¶ 10} Dennis Mathieu, a police officer with the Massillon Psychiatric Center, was working at the facility on January 17, 2000, when he received a trouble call from Unit B-1. Within three minutes, Mathieu arrived at the unit and observed appellant, Walker, and Timmons standing at the end of the hallway. After he assisted in separating the men, Mathieu photographed the area and provided statement forms to the staff members. Mathieu subsequently spoke with appellant, who admitted his presence in the room when White was assaulted, but denied any involvement therein. Appellant informed the officer he was in the bathroom at the time of the incident.
 {¶ 11} Ohio State Highway Patrol Officer Rick Wells arrived at the center to assist in the investigation. By the time the officer arrived, appellant and his two co-defendants were in seclusion. Wells attempted to speak with appellant, but appellant refused to speak with him until appellant's restraints were removed. Wells would not remove the restraints. Wells spoke with appellant approximately one week later after appellant had returned to the Lorain Correctional Institution. Wells advised appellant of his Miranda rights. Although appellant admitted his involvement with the escape attempt, he downplayed his role.
 {¶ 12} After hearing all the evidence and deliberations, the jury found appellant guilty as charged. The trial court sentenced appellant to a period of incarceration of five years on the kidnapping charge, and four years on the escape charge. The trial court ordered the sentences be served concurrently with each other, but consecutive to another sentence appellant was serving out of Ashland County. The trial court memorialized the convictions and sentences via Judgment Entry filed August 9, 2001.
 {¶ 13} It is from this judgment entry appellant appeals, raising as his sole assignment of error:
 {¶ 14} "I. APPELLANT'S CONVICTIONS FOR KIDNAPPING AND ESCAPE WERE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."
 I {¶ 15} Herein, appellant asserts his convictions for kidnapping and escape were against the manifest weight and sufficiency of the evidence.
 {¶ 16} In State v. Jenks (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.
 {¶ 17} When applying the aforementioned standard of review to the case sub judice, based upon the facts noted supra, we do not find, as a matter of law, appellant's convictions were based upon insufficient evidence.
 {¶ 18} On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541 citing State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. Statev. DeHass (1967), 10 Ohio St.2d 230, syllabus 1, 227 N.E.2d 212.
 {¶ 19} Appellant contends the testimony adduced at trial merely places him in the room in which the offenses occurred, but does not establish his involvement therein. We disagree.
 {¶ 20} R.C. 2905.01, which sets the forth the elements for the offense of kidnapping, provides: "(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: (1) To hold for ransom, or as a shield or hostage; (2) To facilitate the commission of any felony or flight thereafter; (3) To terrorize, or to inflict serious physical harm on the victim or another; (4) To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will; (5) To hinder, impede, or obstruct a function of government, or to force any action or concession on the part of governmental authority.
 {¶ 21} "(B) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall knowingly do any of the following, under circumstances that create a substantial risk of serious physical harm to the victim or, in the case of a minor victim, under circumstances that either create a substantial risk of serious physical harm to the victim or cause physical harm to the victim:(1) Remove another from the place where the other person is found; (2) Restrain another of his liberty; (3) Hold another in a condition of involuntary servitude."
 {¶ 22} R.C. 2921.34, which sets forth the elements of escape, provides, in part: "(A)(1) No person, knowing the person is under detention or being reckless in that regard, shall purposely break or attempt to break the detention, or purposely fail to return to detention, either following temporary leave granted for a specific purpose or limited period, or at the time required when serving a sentence in intermittent confinement."
 {¶ 23} As set forth supra, White testified when she entered appellant and Timmons' room, she observed appellant standing at the end of the bed which was closest to the door and the light switch. As she proceeded to the second bed, the lights went out. Timmons came from behind the door and choked White from behind. Walker exited the bathroom and attacked White from the front. During the assault, White testified appellant was searching her and pulling at her clothes. Furthermore, Officer Wells testified he interviewed appellant one week after the incident, and appellant admitted his involvement in the escape plan, but attempted to down play his role.
 {¶ 24} We find White's testimony sufficient from which the jury could find appellant guilty. Assuming, arguendo, the jury found appellant was not the principal offender, under Ohio's complicity statute, there was sufficient evidence from which the jury could find appellant aided and abetted the others in committing or conspiring to commit the offenses. R.C. 2923.03. Despite appellant's testimony to the contrary, the jury was free to accept or reject any or all the testimony of the witnesses and assess the credibility of those witnesses. We do not believe the jury clearly lost its way in its verdict nor did it create a manifest miscarriage of justice by its verdict.
 {¶ 25} Appellant's sole assignment of error is overruled.
 {¶ 26} The judgment of the Stark County Court of Common Pleas is affirmed.
By: Hoffman, P.J., Farmer, J. and Edwards, J. concur